UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

A.J.B., et al.,

     Plaintiffs,

   v.

COUNTY OF MENDOCINO, et al.,

     Defendants.

Case No.  26-cv-01016-WHO

**ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS**

Re: Dkt. No. 29

Nicholas Bakewell died after an interaction with the police in Willits, California, on June 5, 2025.  His children and mother[1] assert eleven causes of action against the County of Mendocino, the City of Willits, Sheriff Matt Kendall, Sergeant Samuel Logan, Deputy Jesus Lopez, Officer Damian Angell, Officer John Gale, Officer Donovan Shively, Chief Brian Fay, and Chief Michael Parish.  In the pending motion, the City of Willits ("City") and Chiefs Fay and Parish (together, "defendants") seek dismissal of the claims against them in plaintiffs' fourth, fifth, and sixth causes of action, contending that plaintiffs have failed to adequately allege municipal and individual liability.  Because the complaint, as currently written, states only conclusory allegations against both individual defendants and the City, the motion to dismiss is GRANTED with leave to amend within 21 days of this Order.

## BACKGROUND

### I.   Factual Background

On June 5, 2025, Nicholas Bakewell was a passenger in a vehicle and had been in an altercation with its driver.  Complaint ("Compl.") [Dkt. No. 1] ¶ 38.  Defendants Logan, Lopez,

---

[1] The plaintiffs are minors A.J.B., C.L.B, and B.B., by and through their Guardian ad litem Adrienne Bakewell, along with Carolyn Bakewell, mother to Mr. Bakewell.

Angell, Gale, and Shivley responded to a call concerning the incident around 7:00 p.m. *Id.* ¶¶ 38-39. Logan and Lopez tased Bakewell and sprayed him with Oleoresin Capsicum spray. *Id.* ¶ 40, Logan, Lopez, Angell, Gale, and Shivley subsequently pulled him by the arms, handcuffed him, and placed him prone on his stomach so that he was unable to breathe, *id.* ¶ 41. He was unarmed. *Id.* ¶ 49. While Bakewell was lying prone on the ground, Angell placed a knee and his body weight on Bakewell's back and neck while Logan, Lopez, Gale, and Shivley held his legs and body down. *Id.* ¶ 43. Throughout this interaction, Bakewell struggled to breathe. *Id.* ¶ 44. Eventually, he went into cardiac arrest and died while lying on the ground under the pressure of the officers. *Id.* ¶¶ 44-45, 48.

Bakewell's surviving family received his autopsy report on September 14, 2025. *Id.* ¶ 50. The report concluded that the cause of death was restraint-associated asphyxiation. *Id.* It cites the Department of Justice's National Institute of Justice guidelines on avoiding restraint-associated asphyxiation. *Id.* The report states that "officer[s] should remove the subject from their stomach as soon as they are handcuffed . . . [and] the subject should be monitored carefully; officers should be trained to recognize problematic breathing . . .[to] minimize the risk posed to subjects involved in struggles with officers." *Id.* Plaintiffs allege that the defendant officers knew or should have known about these guidelines and that their actions on June 5, 2025 would result in significant harm or death. *Id.* ¶¶ 42, 50. Their conduct led to Bakewell's death because they failed to follow those guidelines or because they were never properly trained on those guidelines in the first place. *Id.* ¶ 50.

## II.    Procedural Background

On July 7, 2025, plaintiffs filed a claim for damages with Mendocino County pursuant to the California Government Code. Compl. ¶ 34. They also filed a claim for damages with the City of Willits. *Id.* ¶ 36. Mendocino County and the City of Willits denied all of plaintiffs' claims. *Id.* ¶¶ 35, 37.

Plaintiffs filed their complaint in federal court on February 2, 2026. *See* Dkt. No. 1. They allege eleven causes of action: (1) Unreasonable Search and Seizure—Excessive Force in violation of 42 U.S.C. § 1983 against defendants Logan, Lopez, Angell, Gale, and Shivley, Compl. ¶¶ 51-

64; (2) Deprivation of Life Without Due Process in violation of 42 U.S.C. § 1983 against defendants Logan, Lopez, Angell, Gale, and Shivley, *id.* ¶¶ 65-77; (3) Interference with Parent-Child Relationship in violation of 42 U.S.C. § 1983 against defendants Logan, Lopez, Angell, Gale, and Shivley, *id.* ¶¶ 51-61; (4) Municipal Liability – Unconstitutional Custom, Practice, or Policy in violation of 42 U.S.C. § 1983 against defendants County of Mendocino, Kendall, Lopez, Logan, City of Willits, Fay, Parish, Angell, Gale, and Shivley, *id.* ¶¶ 62-88; (5) Municipal Liability – Failure to Train in violation of 42 U.S.C. § 1983 against defendants County of Mendocino, Kendall, Lopez, Logan, City of Willits, Fay, Parish, Angell, Gale, and Shivley, *id.* ¶¶ 89-101; (6) Municipal Liability—Ratification in violation of 42 U.S.C. § 1983 against defendants County of Mendocino, Kendall, City of Willits, Fay, and Parish, *id*. ¶¶ 102-115; (7) Failure to Summon Medical Care in violation of the Fourth Amendment, 42 U.S.C. § 1983 against defendants Lopez, Logan, Angell, Gale, and Shivley, *id.* ¶¶ 116-122; (8) Wrongful Death in violation of Cal. Civ. Proc. Code § 377.60 against defendants County of Mendocino, City of Willits, Lopez, Logan, Angell, Gale, and Shivley, *id.* ¶¶ 123-130; (9) Assault and Battery against defendants County of Mendocino, City of Willits, Lopez, Logan, Angell, Gale, and Shivley, *id.* ¶¶ 131-38; (10) Negligence against defendants County of Mendocino, City of Willits, Lopez, Logan, Angell, Gale, and Shivley, *id.* ¶¶ 139-146; and (11) Violation of California's Bane Act, Cal. Civ. Code § 52.1 against defendants County of Mendocino, City of Willits, Lopez, Logan, Angell, Gale, and Shivley, *id.* ¶¶ 147-154.  Plaintiffs additionally bring all causes of action against numerous unnamed defendants, identified as Does 1-100.  Plaintiffs seek general, special, and punitive damages.

Defendants City of Willits, Chief Brian Fay and Chief Michael Parish moved to dismiss the claims against them in the fourth, fifth, and sixth causes of action.  *See* Motion to Dismiss ("Mot.") [Dkt. No. 29].  They contend that plaintiffs have failed to adequately allege municipal or supervisory liability. Plaintiffs opposed the motion.  Opposition to the Motion to Dismiss ("Oppo.") [Dkt. No. 34].  Defendants replied.  Reply ISO Motion to Dismiss ("Reply") [Dkt. No. 37].  I held a hearing on the Motion on May 27, 2026.

United States District Court
Northern District of California

3

United States District Court
Northern District of California

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

Defendants move to dismiss the City, Fay, and Parish because plaintiffs have failed to adequately allege facts to support a finding of municipal liability against the City and individual liability against Fay and Parish. I agree with defendants that plaintiffs' claims are insufficiently pleaded.

4

### I.    Claims Against Individual Defendants Fay and Parish

The only claims brought against defendants Fay and Parish are those for municipal liability under § 1983.  As the City is already named as a defendant in these claims, it is superfluous for plaintiffs to name Fay and Parish in their official capacities as well.  *See Smith v. City of Marina*, 709 F. Supp. 3d 926, 937 (N.D. Cal. 2024) ("Because the City and MPD are also named as defendants, naming Chief Nieto in her official capacity as a defendant to his municipal liability claims is redundant.").  It is not clear whether plaintiffs are also attempting to bring claims against them individually under a theory of supervisory liability.  But if I construe plaintiffs' complaint to include these individual claims, the facts as pleaded are sparse, conclusory, and insufficient to state a claim.

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)).  Wrongful conduct by the supervisor may include "'1) [his or her] own culpable action or inaction in the training, supervision, or control of subordinates; 2) [his or her] acquiescence in the constitutional deprivation of which a complaint is made; or 3) [] conduct that showed a reckless or callous indifference to the rights of others.'"  *Hyde v. City of Willcox,* 23 F.4th 863, 874 (9th Cir. 2022) (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000), *as amended* (Oct. 31, 2000)).

Plaintiffs allege that Fay and Parish have "failed to impose adequate discipline and training on [the] officers who committed killings, or who committed other types of excessive force, creating a culture of impunity within the CITY OF WILLITS POLICE DEPARTMENT that encourages such violence and incidents of unreasonable force against the public."  Compl. ¶¶ 5-6.  They offer no further details regarding any specific conduct by Fay and Parish that resulted in inadequate discipline or training for their subordinates or how this conduct created "a culture of impunity" that is connected to the incident at issue here.  These threadbare and conclusory statements are not sufficient to state a claim.

5

Plaintiffs' briefing suggests that they may have more information regarding the specific roles of Fay and Parish in ratifying the actions of the individual officers. *See* Oppo. at 19 ("Chief Brian Fay and Chief Michael Parish . . . who had final policymaking authority concerning the acts of [d]efendants . . . ."). If plaintiffs believe they have additional relevant facts to support claims against Fay and Parish as individuals, they may add them upon amendment. Both Fay and Parish are DISMISSED from this action WITHOUT PREJUDICE.

### II.    *Monell* Claims Against the City of Willits

Plaintiffs bring three § 1983 claims against the City of Willits under a theory of municipal liability pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). They contend that the City is liable for the acts of its employees because it (i) had in place numerous unconstitutional policies, practices, or customs; (ii) failed to adequately train its employees to avoid constitutional violations; and (iii) ratified the actions of employees who had committed constitutional violations. Defendants challenge each of these claims as insufficiently pleaded because they are based on conclusory allegations and lack specific and detailed facts.

"To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must establish: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy, custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation." *Torres v. Saba*, No. 17-cv-06587-SI, 2019 WL 111039, at *6 (N.D. Cal. Jan. 4, 2019), *aff'd*, 816 F. App'x 143 (9th Cir. 2020). Under this standard, an eligible "policy, custom, or practice" may include "written policies, unwritten customs and practices, [and] failure to train municipal employees on avoiding certain obvious constitutional violations[.]" *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). Liability may also be established by "showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate" involved in the constitutional violations. *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002).

Defendants do not dispute that plaintiffs have sufficiently alleged a deprivation of a

United States District Court
Northern District of California

6

United States District Court
Northern District of California

constitutional right against the officers involved in the incident.  But they assert that plaintiffs' allegations fall short of the remaining three factors for municipal liability and do not establish the existence of any policy, practice or custom by the City that amounts to deliberate indifference and was the moving force behind the alleged constitutional violations.

### A.   Unconstitutional Custom, Practice or Policy

Under their fourth cause of action, plaintiffs bring a *Monell* claim against the City for maintaining numerous unconstitutional polices, practices, and customs that allegedly contributed to defendants' use of excessive force against Bakewell.  Compl. ¶¶ 62-88.  Defendants argue that this claim is insufficient because plaintiffs have not identified any specific official policy relevant to the underlying incident and have further failed to plead a pattern of similar incidents to establish that any unofficial City practices and customs were longstanding and widespread.  Mot. at 3-4.

Plaintiffs maintain that they have adequately identified the policies and practices relevant to this matter and are not required at this stage to provide additional facts regarding other related incidents under the pleading standards set out in *Starr* and applied to the *Monell* context in *A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012).  Oppo. at 11-15.  They highlight the following allegations of "unconstitutional customs, practices, and policies" as sufficient to support this claim:

    a.  Using excessive and objectively unreasonable force, including deadly force on unarmed persons who do not pose a risk of immediate death or serious bodily injury to others.

    b.  Providing inadequate training regarding the use of force, including the use of less-lethal force, and deadly force.

    c.  Using deadly force against a person suffering from a mental health crisis.

    d.  Employing and retaining as deputies and officers, individuals such as Defendants SAMUEL LOGAN, JESUS LOPEZ, DAMIAN ANGELL, JOHN GALE, and DONOVAN SHIVLEY who upon information and belief, Defendants COUNTY, CITY, and DOES 1-100, at all material times herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force

    e.  Inadequately supervising, training, controlling, assigning, and disciplining COUNTY Deputies who COUNTY knew or in the exercise of reasonable care should have known, had the aforementioned propensities or character traits.

    f.  Inadequately supervising, training, controlling, assigning, and disciplining CITY Officers who CITY knew or in the exercise of reasonable care should have known, had the

7

United States District Court
Northern District of California

aforementioned propensities or character traits.

g. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by law enforcement deputies of the COUNTY.

h. Maintaining grossly inadequately procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by law enforcement officers of the CITY.

i. Even where uses of force are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the Deputies and Officers involved.

j. Failing to adequately discipline COUNTY and/or CITY law enforcement deputies and/or officers for the above-mentioned categories of misconduct, including inadequate discipline and "slaps on the wrist," discipline that is so slight as to be out of proportion with the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

k. Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which COUNTY Deputies and CITY Officers do not report other Deputies' and Officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another Deputy or Officer, while following the code, the Deputy or Officer being questioned will claim ignorance of the other Deputy or Officer's wrongdoing.

l. Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of law enforcement shootings including failing to discipline, retrain, investigate, terminate, and recommend deputies and officers for criminal prosecution who participate in shootings of unarmed people.

m. Otherwise covering up police misconduct.

Compl. ¶ 66. This laundry list of bases for liability is unaccompanied by allegations concerning any specific incident other than the one involving Bakewell.

"[T]o be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *A.E.*, 666 F.3d at 637 (quoting *Starr,* 652 F.3d at 1216). In addition, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

In the context of a *Monell* claim based on a City policy or custom, courts have interpreted the above pleading standard to mean that plaintiffs must allege with specificity the content of the

United States District Court
Northern District of California

custom or policy at issue.  Vague and conclusory allegations that a municipality has a policy that resulted in the constitutional violations are inadequate to state a claim.  In *Mendy v. City of Fremont*, for example, the *Monell* claim was insufficient where the allegations were that the municipality had an "informal custom or policy that tolerates and promotes the continued use of excessive force and cruel and unusual punishment against and violation of civil rights of citizens by City police officers in the manner alleged [elsewhere in the FAC] . . . ."  No. C-13-4180 MMC, 2014 WL 574599, at *3 (N.D. Cal. Feb. 12, 2014) (alteration in original).  Similarly, in *Bagley v. City of Sunnyvale,* allegations such as that the municipality was "failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force and unlawful seizures" were too generalized to state a claim.  No. 16-CV-02250-LHK, 2017 WL 344998, at *16 (N.D. Cal. Jan. 24, 2017).  By contrast, in *Mateos-Sandoval v. County. of Sonoma*, the court found the allegations were sufficient when they described policies such as that defendants "routinely enforce[d]" a California vehicle code provision by "seizing and impounding vehicles on the basis that the driver does not have a current, valid California driver's license, including when the vehicle was not presenting a hazard or a threat to public safety" and by "keeping the vehicle [even though] someone was available to pay the impound fee to date, usually for the 30 day period specified by [the statute]."  942 F. Supp. 2d 890, 899 (N.D. Cal. 2013) (alterations in original), *aff'd sub nom. Sandoval v. Cnty. of Sonoma*, 591 F. App'x 638 (9th Cir. 2015), *opinion amended and superseded on denial of reh'g*, 599 F. App'x 673 (9th Cir. 2015), *and aff'd sub nom. Sandoval v. Cnty. of Sonoma*, 599 F. App'x 673 (9th Cir. 2015).

While claims based on unconstitutional policies, practices, and customs all require adequately specific and non-conclusory allegations, there are some differences in the requirements to state a claim for liability based on an alleged policy versus an alleged custom or practice.  "[W]ith respect to an adopted municipal policy, a single incident can serve as the basis of a *Monell* claim so long as 'proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'"  *Bagley,* 2017 WL 344998, at *14 (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)).  But "[l]iability for improper custom may not be predicated on isolated or sporadic

incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996).

It is not clear from plaintiffs' complaint whether they are asserting that the City had a policy relevant to their *Monell* claims. While they use the word "policy" to describe some of the practices above, they also allege in another part of the complaint that "[o]n information and belief, the official policies with respect to the incident are that neither COUNTY [d]eputies nor CITY [o]fficers are to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injuries to the deputies officers and others. The actions of the [d]eputies and [o]fficers deviated from these official policies . . . ." Compl. ¶ 112. Regardless of how the above practices are categorized, they are stated in a generally conclusory manner more similar to the examples rejected by the court in *Mendy* and *Bagley* than the allegations accepted in *Mateos-Sandoval*. They are insufficient to support plaintiffs' *Monell* claim on this basis alone. To the extent plaintiffs are alleging these are practices or customs of the City rather than policies, they have failed to plead sufficient facts demonstrating the consistent and pervasive nature of these practices.

### B.  Failure to Train

Plaintiffs' fifth cause of action involves a *Monell* claim against the City for failure to adequately train its employees on the use of force in subduing a suspect. Compl. ¶¶ 89-101. Defendants argue that plaintiffs' allegations are insufficient to demonstrate a failure to train because these allegations are entirely based on the same incident that forms the basis of this lawsuit. Mot. at 4. Plaintiffs do not contest that they are relying on a single incident to show lack of training but assert that the allegations are sufficient to survive the motion to dismiss stage. Oppo. at 15-17.

A municipality may be liable where its "failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants . . . ." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Generally, "[a] pattern of similar constitutional violations by untrained employees is . . . necessary to demonstrate deliberate indifference for purposes of failure

to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks and citation omitted). "[I]n rare instances, single constitutional violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality . . . ." *Benavidez*, 993 F.3d at 1153. However, "[w]hile deliberate indifference can be inferred from a single incident . . . an inadequate training policy itself cannot be inferred from a single incident." *Hyde*, 23 F.4th at 874-75 (internal citation omitted).

Plaintiffs assert that the City "failed to properly and adequately train Defendant officers including with regard to the use of deadly force, especially with regard to a subject suffering a mental health crisis." Compl. ¶ 93. They further allege that the City "failed to train officers not to handcuff individuals and place them on their stomachs for an extended period of time causing asphyxiation." *Id.* ¶ 95. They also contend that "the training policies of [the City] were not adequate to train their deputies and officers to handle the usual and recurring situations with which they must deal, including de-escalation techniques, tactical communication, tactical positioning, and both the use of less than lethal and lethal force." *Id.* ¶ 96.

But at the same time, plaintiffs state numerous times throughout the complaint that the defendants' actions against Bakewell occurred in violation of the training they had received. For example, the complaint cites advisory guidelines from the Department of Justice's National Institute of Justice on preventing asphyxiation during an arrest and states that defendants "were provided with similar guidelines and/or training" and "failed to follow [the] guidelines, or failed to be properly trained on the guidelines, or chose to ignore their training . . . ." *Id.* ¶ 50. Similarly, in other parts of the complaint, plaintiffs assert that "Defendants . . . ignored their training, placed [Mr. Bakewell] in handcuffs, and left him on his stomach for an extended period of time," *id.* ¶ 42, and that "Defendants' . . . tasing and use of force violated their training . . . ," *id.* ¶ 59.

Taken together, plaintiffs appear to contend that defendants may have received some training, but that this incident demonstrates that this training was ineffective. That does not state a claim. A single incident of alleged unconstitutional behavior by the officers without any other facts does not demonstrate that the City had a practice of insufficient training. *See Hyde*, 23 F.4th at 874-75; *see also Smith*, 709 F. Supp. 3d at 936 ("To state a claim that challenges training,

11

[plaintiff] must plead allegations beyond the facts of the particular challenged incident 'suggesting that the training . . . was defective.'") (citation omitted). Plaintiffs have failed to plead facts sufficient to establish the existence of the practice, let alone whether it "amounted to deliberate indifference" or was the "moving force" behind the violations.

### C.    Ratification

Finally, under their sixth cause of action, plaintiffs assert a *Monell* claim against the City based on a theory of ratification by a municipal policymaker. Compl. ¶¶ 102-115. Defendants contend that plaintiffs' pleading is inadequate as they have not identified: (i) the relevant policymaker and (ii) specific instances of ratification connected to the underlying incident. Mot. at 5-6. In their opposition, plaintiffs seem to identify Fay and Parish as policymakers for the City and state that they have otherwise pleaded that Fay and Parish had specific knowledge of, and approved, the actions of the officers. Oppo. at 18-19.

Municipalities may be liable "if a final policymaker ratifies a subordinate's [unconstitutional] actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). "A single decision by a municipal policymaker 'may be sufficient to trigger Section 1983 liability under *Monell*, even though the decision is not intended to govern future situations,' but the plaintiff must show that the triggering decision was the product of a 'conscious, affirmative choice' to ratify the conduct in question." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1055 (9th Cir. 2009) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir.1992)).

Plaintiffs allege that "a final policymaker" for the City "knew of and specifically approved of Defendants' acts, specifically approving the CITY Police officers' asphyxiation of Decedent when he was not an immediate threat of death or serious bodily injury." Compl. ¶ 111. Plaintiffs contend that "a final policymaker[] has determined (or will determine) that the acts of Defendant Deputies and Defendant Officers were 'within policy' of their respective departments." *Id.* ¶ 113. Those allegations do not support a showing of any conscious choice by a municipal policymaker to approve the actions of the officers; they are conclusory and lack any specificity, stating only that a ratification of the officers' actions against Bakewell took place (or may take place in the future) without alleging any facts to support how and in what form that approval occurred. On

12

these sparse facts, plaintiffs fail to state a claim for municipal liability based on ratification.

In sum, I conclude that plaintiffs have not sufficiently stated a claim against the City under *Monell*. As these deficiencies may be curable upon amendment, I will give plaintiffs leave to amend.[2]

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss is GRANTED. Causes of action four, five, and six against the City of Willits are DISMISSED WITHOUT PREJUDICE. Individual defendants Chief Brian Fay and Chief Michael Parish are also DISMISSED from this action WITHOUT PREJUDICE. Plaintiffs may file an amended complaint within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: June 1, 2026



William H. Orrick
United States District Judge

___

[2] As I noted during the May 27, 2026 hearing, plaintiffs may not be able to identify facts sufficient to adequately allege their *Monell* claims at this stage of the case. This does not preclude them from later seeking to amend if they learn additional facts during discovery that would support bringing these claims.